**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000292**
**09-OCT-2025**
**07:59 AM**
**Dkt. 63 SO**

NOS. CAAP-22-0000292 and CAAP-23-0000108

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

**CAAP-22-0000292**

WILMINGTON SAVINGS FUND SOCIETY, FSB,
DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR
PRETIUM MORTGAGE ACQUISITION TRUST, Plaintiff-Appellee,
v.
BROOKE JULIET CARLINA RIOPTA; AMBER MEGAN RIOPTA;
CASIE ANN RIOPTA, Defendants-Appellants,
COUNTY OF KAUAI-WASTEWATER MANAGEMENT, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and
DOE GOVERNMENTAL UNITS 1-10, Defendants

and

**CAAP-23-0000108**

WILMINGTON SAVINGS FUND SOCIETY, FSB,
DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR
PRETIUM MORTGAGE ACQUISITION TRUST, Plaintiff-Appellee,
v.
BROOKE JULIET CARLINA RIOPTA; AMBER MEGAN RIOPTA;
CASIE ANN RIOPTA, Defendants-Appellants,
COUNTY OF KAUAI-WASTEWATER MANAGEMENT, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and
DOE GOVERNMENTAL UNITS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC111000358)

**SUMMARY DISPOSITION ORDER**
(By: Wadsworth, Presiding Judge, McCullen and Guidry, JJ.)

These consolidated appeals, case nos. CAAP-22-0000292 and CAAP-23-0000108, arise out of a foreclosure action filed by Citimortgage, Inc. (**Citimortgage**) against Defendants-Appellants Brooke Juliet Carlina Riopta (**Brooke**), Amber Megan Riopta (**Amber**), and Casie Ann Riopta (collectively, the **Rioptas**) in the Circuit Court of the Fifth Circuit (**circuit court**).[1]

In case no. CAAP-22-0000292 (**2022 Appeal**), the Rioptas appeal from the (1) "Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**),] and Order Granting Plaintiff[-Appellee Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, not in its Individual Capacity, but Solely as Trustee for Pretium Mortgage Acquisition Trust's (**Wilmington**)] Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure" (**Foreclosure Order**), and (2) Judgment regarding the Foreclosure Order (**Foreclosure Judgment**), both of which were filed on March 23, 2022 in the circuit court. The Rioptas raise five points of error, contending that the circuit court erred: (1) when it ruled, in determining whether Wilmington had possession of the Note, that the applicable date was the date of the "First Amended Complaint for Mortgage Foreclosure" (**Amended Complaint**), and not the date of the

---

[1] The Honorable Kathleen N.A. Watanabe presided.

complaint filed by Citimortgage in 2011 (**2011 Complaint**); (2) when it granted Wilmington's January 2022 motion for summary judgment (**2022 MSJ**); (3) in making FOFs 4 and 6;[2] (4) in making COLs 4 and 8; and (5) when it granted Wilmington's motion for leave to file its Amended Complaint.

In case no. CAAP-23-0000108 (**2023 Appeal**), the Rioptas appeal from the (1) "Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorney's Fees, Costs, Directing Conveyance and for Writ of Ejectment" (**Confirmation Order**), and (2) Judgment regarding the Confirmation Order (**Confirmation Judgment**), both of which were filed on February 10, 2023 in the circuit court. The Rioptas raise two points of error, contending that the circuit court erred in finding that: (1) the sale was legally made, fairly conducted, and the highest price obtained under the circumstances; and (2) no objections were filed or made to the Commissioner's Report because the Rioptas did object to the Commissioner's Report.

Upon careful review of the record and relevant legal authorities, and having given due consideration to the arguments

---

[2] We note that a circuit court deciding a motion for summary judgment does not make FOFs. We therefore apply the summary judgment standard herein and, where appropriate, we consider the circuit court's FOFs to be statements of the uncontroverted facts.

advanced and the issues raised by the parties, we resolve the Rioptas' points of error as follows[3]:

## I. The Rioptas' 2022 Appeal

(1) The Rioptas contend that the circuit court erred in granting leave for Wilmington to file an amended complaint because: (1) Wilmington gave conflicting and false reasons for requesting leave to amend its complaint; and (2) the circuit court granted the motion before the Rioptas could obtain new counsel.

The Rioptas did not file an opposition to Wilmington's motion for leave to amend the complaint or request an extension to file their opposition. "Legal issues not raised in the trial court are ordinarily deemed waived on appeal." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) (citations omitted). We therefore decline to address this contention.[4]

(2) The Rioptas contend that the circuit court erred in granting Wilmington's 2022 MSJ because Wilmington established

---

[3] For purposes of our analysis, we consolidate and renumber the Rioptas' points of error and arguments herein to the extent it makes sense to do so.

[4] The Rioptas, moreover, do not explain how the circuit court erred in granting the motion before the Rioptas could obtain new counsel. See Exotics Haw.-Kona, Inc. v. E.I. du Pont de Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007) (noting that the appellate courts are "not obliged to address matters for which the appellants have failed to present discernible arguments") (citations omitted).

it had standing at the time the Amended Complaint was filed, rather than at the time the 2011 Complaint was filed.  We review the circuit court's grant of summary judgment de novo and apply the following standard:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Ralston v. Yim, 129 Hawaiʻi 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (citation omitted).

A foreclosing plaintiff must establish standing at the commencement of the foreclosure action.  Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 368, 390 P.3d 1248, 1255 (2017).  "[A]n action cannot be maintained if it is prematurely commenced before the accrual of the cause of action which is sought to be enforced."  Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 310, 760 P.2d 676, 680 (App. 1988).  "However, the error or defect of premature commencement may be cured by filing an amended or supplemental complaint after the cause of action has accrued, unless the amended complaint states a different cause of action."  Id. (cleaned up); see also US Bank Nat'l Ass'n v.

Swink, No. CAAP-23-0000017, 2025 WL 2093151, at *2 (Haw. App. July 25, 2025) (SDO).

We therefore conclude that the circuit court was not wrong in allowing Wilmington to establish that it had standing at the time of the Amended Complaint.

(3) The Rioptas contend that there is a genuine issue of material fact as to the authenticity of the Note.[5] Wilmington asserts it submitted a copy of the Note and Note Allonge pursuant to Hawaii Rules of Evidence (**HRE**) Rule 901(b)(1).

"[C]opies of [a n]ote . . . are not self-authenticating commercial paper," but they are still admissible "if there is evidence sufficient to support a finding that they are what [the proponent of the note] claims [them to be]." U.S. Bank Tr., N.A. v. Verhagen, 149 Hawai‘i 315, 325, 489 P.3d 419, 429 (2021) (cleaned up). "Testimony of a witness with personal

---

[5] The Rioptas also contend the circuit court erred because neither Wilmington nor Citimortgage had possession of the Note when the 2011 Complaint was filed, and, therefore, Wilmington did not have standing. The Rioptas further contend that because the Note was endorsed after the 2011 Complaint was filed, Wilmington has not established that it "held" the Note at the time of filing. Because we concluded supra that Wilmington can establish standing at the time the Amended Complaint was filed, we need not address these contentions.

We also decline to address the Rioptas' contention that the original mortgagee, ABN AMRO Mortgage Group, Inc. (**ABN AMRO**), violated the Truth in Lending Act when it failed to provide the Rioptas with "completed" copies of the Notice of Right to Cancel. The Rioptas did not raise this issue in their opposition to Wilmington's 2022 MSJ, and therefore this contention is waived. See Ass'n of Apartment Owners of Wailea Elua, 100 Hawai‘i at 107, 58 P.3d at 618.

knowledge of a document may establish the foundation necessary for its admission." Id. (citing HRE Rule 901(b)(1)).

The "Declaration of Indebtedness and on Prior Business Records" (**Declaration**), by Watson Dixon (**Dixon**), established an adequate foundation to admit a copy of the Note and Note Allonge. Dixon declared under penalty of perjury that a true and correct copy of the Note and Note Allonge, which he had reviewed, were attached to the 2022 MSJ.[6] Therefore, the Note

---

[6]    The Declaration states, in relevant part:

1.    **I am authorized to sign this Declaration on behalf of [Wilmington] as an authorized signer of Selene Finance LP** [(**Selene**)], which is [Wilmington's] servicing agent for the subject loan ("the loan").

.    .    .    .

4.    The information in this Declaration is taken from Selene's business records. **I have personal knowledge of Selene's procedures for creating these records.** They are: (a) made at or near the time of the occurrence of the matters recorded by persons with knowledge of the information in the business record, or from information transmitted by persons with knowledge; (b) kept in the course of Selene's regularly conducted business activities; and (c) created by Selene as a regular practice.

5.    **On or about 03/05/2007, [Brooke and Amber], for value received, duly made and executed a Note ("Note") in the amount of $367,500.00. A true and correct copy of the Note, which I have reviewed, is attached as Exhibit "1" and is incorporated herein by reference.** [Wilmington], by and through its counsel, has possession of the Note with standing to prosecute the instant action and the right to foreclose the subject Mortgage. The original Note has been specially indorsed to [Wilmington].

6.    **The Note contains a Note Allonge ("Allonge") by which the Note is specially indorsed to [Wilmington]. The original Allonge was executed, affixed to the original Note, and has been made a part of the original Note. A true and correct copy of the Allonge, which I have**

(continued . . .)

7

and Note Allonge were admissible as copies of a promissory note pursuant to HRE Rule 901(b)(1). See Verhagen, 149 Hawai'i at 325, 489 P.3d at 429.

Next, the Rioptas contend that there is a question as to the authenticity of the Note and Note Allonge because the "original" Note was the note attached to the 2011 Complaint, which "had no endorsement and thus had no allonge."

Hawaii Revised Statutes (**HRS**) § 490:3-308 (2008) states, in relevant part, that:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. **If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized**[.]

(Emphasis added.)

The Rioptas specifically denied the authenticity of "any signature on any Note" in their answer to the Amended Complaint. The record reflects that there were two different versions of the Note that were submitted. The Note attached to the 2011 Complaint and Citimortgage's 2012 motion for summary judgment did not include any indorsements. The Note attached to

---

⁶(. . .continued)

> **reviewed, is attached as the last page of Exhibit "1" and is incorporated herein by reference.**

(Emphasis added.)

Wilmington's 2016 motion for summary judgment and 2022 MSJ included an indorsement from ABN AMRO to Pretium Mortgage Credit Partners I Loan Acquisition, LP (**Pretium Mortgage**), and a Note Allonge with an indorsement to Wilmington.

The Rioptas, however, did not introduce any evidence that would support their contention that the indorsements to Pretium Mortgage and Wilmington were not authentic. "[S]ignature[s] [are] presumed to be authentic and authorized[.]"  HRS § 490:3-308(a); see HRS § 490:1-206 (2008) ("Whenever this chapter . . . provides that a fact is 'presumed', the trier of fact shall find the existence of the fact unless evidence is introduced that supports a finding of its nonexistence.")

Therefore, the Rioptas have not demonstrated that there is a genuine issue of material fact as to the authenticity of the Note on this basis.  See Hawaiʻi Rules of Civil Procedure Rule 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.")

Finally, the Rioptas contend that Wilmington did not prove that the Note Allonge was "affixed" to the Note.  "Whether a separate, unattached indorsement page can constitute a proper indorsement of a negotiable instrument is a question of state

law."  Adams v. Madison Realty & Dev., Inc., 853 F.2d 163, 165-66 (3d Cir. 1988).  HRS § 490:3-204(a) (2008) defines "[i]ndorsement" and provides that:

> **"Indorsement" means a signature,** other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is **made on an instrument for the purpose of (i) negotiating the instrument,** (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, **a signature and its accompanying words is an indorsement unless the accompanying words, the terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement.  For the purpose of determining whether a signature is made on an instrument, a paper affixed**[7] **to the instrument is a part of the instrument.**

(Emphasis added.)

Here, the indorsement to Wilmington was made on an allonge, which is "a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."[8]  U.S. Bank N.A. v. Mattos, 140 Hawaiʻi 26, 29 n.4, 398 P.3d 615, 618 n.4 (2017) (citation omitted).  The Note Allonge correctly identifies Brooke and Amber as the borrowers, and accurately states the property address and the loan amount. See Marts v. U.S. Bank Nat'l Ass'n, 166 F.Supp.3d 1204, 1210

---

[7]    The plain language of the statute does not expressly state how to determine whether a paper is "affixed" to an instrument, thereby making it a part of the instrument.  See HRS § 490:3-204(a).  HRS Chapter 490 does not define "affix" or "affixed."  See HRS §§ 490:1-201 (2008), 490:3-103 (2008).

[8]    "[A]n allonge is part of the instrument, and is valid even if the instrument has enough space to hold additional endorsements."  Thompson v. Bank of Am., N.A., 773 F.3d 741, 747 n.1 (6th Cir. 2014) (internal quotation marks omitted).

(W.D. Wash. 2016) (noting that other jurisdictions have found "that evidence of intent to affix the allonge to the note is sufficient to establish a valid endorsement") (cleaned up).

Moreover, the Note Allonge states that "[f]or the purpose of endorsement of the attached Note, this [Note] Allonge is affixed and becomes a permanent part of said Note." See Wane v. Loan Corp., 552 F. App'x 908, 914 (11th Cir. 2014) (noting that the record did not support the contention that the allonge was not properly affixed to the promissory note where "[t]he allonge itself purported to be affixed to the note, such that it became a part of it").

The Rioptas did not set forth specific facts to support their contention that the Note Allonge was not affixed to the Note. See Ralston, 129 Hawai'i at 56-57, 292 P.3d at 1286-87 ("[W]hen the moving party satisfies its initial burden of production[,] . . . the burden shift[s] to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.") (citation omitted). Based on the evidence presented by Wilmington, and absent circumstances suggesting otherwise, the circuit court did not err in treating the Note Allonge as a valid indorsement.

For the foregoing reasons, we conclude the circuit court was not wrong in granting summary judgment in favor of Wilmington.

(4) The Rioptas contend that the circuit court erred in finding that ABN AMRO merged with Citimortgage because this court previously stated, in its June 12, 2018 Summary Disposition Order (**2018 SDO**), that there was no admissible evidence establishing "that Citimortgage was entitled to foreclose because it had merged with ABN AMRO . . . or any alternative basis for Citimortgage's right to foreclose under the Note when the [2011] Complaint was filed."[9]

Wilmington's 2022 MSJ included Citimortgage's "Petition for Order Regarding Merger" and "Certificate of Merger of [ABN AMRO] into Citimortgage."  The Rioptas did not challenge the admissibility of these documents during the 2022 MSJ proceedings.  Moreover, the Rioptas do not explain how this evidence was not admissible.  Therefore, we determine, on this record, that the Rioptas' contention lacks merit.

---

[9]    It appears that the court, in its 2018 SDO, concluded that there was no admissible evidence establishing Citimortgage's right to foreclose, and not necessarily that there was no admissible evidence establishing ABN AMRO's merger with Citimortgage.  See Wilmington Sav. Fund Soc'y, FSB v. Riopta, No. CAAP-16-0000884, 2018 WL 2928182, at *2 (Haw. App. June 12, 2018) (SDO).

## II.  The Rioptas' 2023 Appeal

(1) The Rioptas contend that the appropriate standard for the circuit court to apply when evaluating the foreclosure sale price is "whether the sale price is fair and reasonable," or whether "fair and reasonable means" were used to obtain the best sale price.  (Internal quotation marks omitted.)  The "fair and reasonable" standard applies to non-judicial foreclosures. See Hungate v. Law Off. of David B. Rosen, 139 Hawai'i 394, 408-09, 391 P.3d 1, 15-16 (2017), abrogated on other grounds by, State ex rel. Shikada v. Bristol-Myers Squibb Co., 152 Hawai'i 418, 526 P.3d 395 (2023).  Therefore, this contention lacks merit.

The Rioptas further contend that the circuit court erred in confirming the sale and finding that the sale of the subject property was the highest price that could be obtained under the circumstances.  We review the circuit court's decision to confirm a judicial sale for abuse of discretion.  Hoge v. Kane, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (App. 1983).

The circuit court is expected to "act in the interest of fairness and prudence and with just regard for the rights of all concerned and the stability of judicial sales." Id. (citation omitted).  The circuit court must not confirm the sale "[i]f the highest bid is so *grossly inadequate as to shock the conscience*."  Id. (emphasis added) (citation omitted); see also

13

HawaiiUSA Fed. Credit Union v. Monalim, 147 Hawai'i 33, 45, 464 P.3d 821, 833 (2020) (observing that "the price obtained at a foreclosure sale is often far below the fair market value of the property as a result of the forced nature of a foreclosure sale") (citations omitted).

The record reflects that the Rioptas, Wilmington, and the Commissioner signed a "Stipulation to Sell Property Without Open Houses," in which the Rioptas acknowledged that "the sale of the [subject p]roperty without open houses may result in a lower sale price at the public or private sale."  The Commissioner's Report reflects that Wilmington was the only bidder, and Wilmington bid $590,000.  The Commissioner acknowledged that the sale price was "a touch low in a moving market," but that "it [was] likely a fair one given the market direction [was] downward."[10]

We therefore conclude, on this record, that the circuit court did not abuse its discretion in confirming the sale of the subject property at the price obtained.

---

[10]     The Rioptas also contend that Wilmington "bid over $100,000 below what they were owed" and that "[t]he court[] should not allow the lender to play games like this, unless the lender affirmatively states that they will not seek a deficiency judgment."  However, Wilmington's Amended Complaint states that, under the amended claim, "it is not entitled to a deficiency judgment in the event the foreclosure sale proceeds are insufficient to fully discharge and satisfy [Wilmington's] total debt."

(2) The Rioptas contend that the circuit court erred in determining that "no objections have been filed or made to the Commissioner's Report." The record reflects that the Rioptas did not file a separate objection to the Commissioner's Report. Therefore, the Rioptas' contention lacks merit.

For the foregoing reasons, we affirm the Foreclosure Order, Foreclosure Judgment, Confirmation Order, and Confirmation Judgment.

DATED: Honolulu, Hawai'i, October 9, 2025.

On the briefs:                          /s/ Clyde J. Wadsworth
                                        Presiding Judge
Keith M. Kiuchi,
for Defendants-Appellants.              /s/ Sonja M.P. McCullen
                                        Associate Judge
Charles R. Prather,
for Plaintiff-Appellee.                 /s/ Kimberly T. Guidry
                                        Associate Judge